IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22-00235-01-CR-W-BP |
| WILLIAM LEE BAILEY, *a/k/a Lee Bailey,* | |
| Defendant. | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1.    The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, and Sean T. Foley, Assistant United States Attorney, and the defendant, William Lee Bailey *a/k/a Lee Bailey* ("the defendant"), represented by Arimeta Dupree.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2.    Defendant's Guilty Plea.** The defendant agrees to plead guilty to the lesser included offense of Count One of the Indictment charging him with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 846, that is, conspiracy to distribute 50 grams or more of

methamphetamine. The defendant further agrees to and hereby does plead guilty to Count Six of the Indictment charging him with a violation of 18 U.S.C. § 924(c)(1)(A)(i), that is, Possession of a Firearm in Furtherance of a Drug Trafficking Crime. By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is in fact guilty of them.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which he is pleading guilty are as follows:

The Defendant **WILLIAM LEE BAILEY** *a/k/a Lee Bailey* knowingly and intentionally considered and agreed with others, both known and unknown, to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), and 846. The conspiracy began at an unknown date but no later than August 1, 2019, and continued to at least March 26, 2021, and **BAILEY** agrees he participated in this conspiracy within Jackson County, Missouri, which is within the Western District of Missouri and elsewhere. POSTON agrees that this conspiracy for which he participated in was an agreement distribute 500 grams or more of methamphetamine.

In the Fall of 2020 and into the Spring of 2021, law enforcement officials in the Independence, Missouri area obtained information about individuals dealing large amounts of methamphetamine from a residence in Independence, Missouri, which is within the Western District of Missouri ("the Residence"). Law enforcement officials identified **BAILEY**, POSTON, and SAVANNAH SMITH as coming and going from the Residence or having vehicles associated with them at it.

On March 16, 2021, officials identified a maroon Chevrolet truck bearing Missouri ("Maroon Truck"), arrive at the residence. A male later identified as BRANDON BEADEL got out, and went into the Residence through its backdoor. About a half hour later, BEADEL left the residence speaking with POSTON, and then got in the Maroon Truck and drove away. Officers conducted a car stop on the Maroon truck for traffic violations and BEADEL was driving and appeared under the influence of drugs or alcohol. The Maroon Truck was searched and investigators found a Ruger 9mm magazine loaded with seven rounds as well as a black bag, which contained two bags of methamphetamine one weighing 30 grams and the other 8 grams.

Following the car stop and the drugs being recovered from BEADEL, investigators on March 18, 2021, applied for and obtained search warrant for the Residence. The Residence was searched on March 25, 2021. **BAILEY**, SMITH, and ALYSSA ENLOW, along with two children, were inside the Residence.

2

As the officers moved through, they observed a large TV Monitor in the basement linked to a Ring Video Camera Surveillance system ("Ring System") which was recording surveillance video from cameras filming both the outside of the Residence, as well as activity from inside the Residence's basement. The search of the Residence uncovered, among other items, the following:

- technicolor DVR system from the main floor living room;
- A Savage Arms 320, pistol grip 12-guage shotgun ("the Savage Arms") and shells from storage shed with defaced serial number;
- a Ruger SR9C, 9mm pistol bearing serial number 336-25356 ("the Ruger") from the kitchen, loaded with a magazine with 10 rounds;
- Methamphetamine and Drug Distribution Evidence in Basement:
  - Gray Zippered "Glock" Case ("Glock Case") with a Ziplock bag with 796.70 grams of methamphetamine;
  - Digital scale and empty baggies from bag on basement bed;
  - Black Bag in basement dryer with two Ziplock bags containing respectively 87.10 grams and 210.82 grams of methamphetamine;
  - four 12-guage shells, a 9mm cartridge and two magazine son bed in basement;
  - Black nylon holster in basement north room;
  - Seven 12-guage shells from south wall of basement bedroom;
  - Two LG phones and six 9mm cartridges and magazine from bedroom headboard;
  - thirteen .45 caliber and one 9mm cartridges from top drawer basement bed;
  - Notepad from downstairs basement bedroom;
  - Pink file folder with papers belonging to ENLOW from north basement room clothes hamper

On April 8, 2021, investigators obtained a search warrant for the Ring System installed at the Residence. The Ring System account belonged to "Lee Bailey." The Ring System had been set up to film and record activity inside the Residence's basement, which also happened to be the location from where the parties distributed drugs. The Ring System search warrant returned video roughly from February 18, 2021, through the search warrant's execution on March 25, 2021.

The Ring System provided evidence that **BAILEY** and others both known and unknown were engaged in a conspiracy to distribute methamphetamine. The video showed numerous drug transactions, individuals possessing firearms, individuals counting U.S. Currency as proceeds from the conspiracy, and individuals possessing large, gallon Ziplock bags containing methamphetamine.

**BAILEY** agrees that the Ring System captured numerous times in which **BAILEY** was holding large Ziplock bags containing methamphetamine, weighing out methamphetamine, taking U.S. Currency in exchange for methamphetamine, and possessing firearms. All of these actions **BAILEY** admits were done to further the conspiracy.

3

On or about March 25, 2021, **BAILEY** was present in the Residence's basement just before investigators arrived to execute the search warrant. **BAILEY** is on video possessing both the Glock Case containing roughly 796 grams of methamphetamine and the Black Bag with roughly 280 grams of methamphetamine. **BAILEY** also on or about March 25, 2021, was in possession of two firearms, that is the Ruger SR9C and the Savage Arms. For purposes of this agreement, the parties agree that **BAILEY** on or about March 25, 2021, possessed both the Ruger and the Savage Arms in furtherance of the conspiracy distribute methamphetamine detailed above. **BAILEY** also admits he knowingly agreed with others to distribute 500 grams or more of a mixture or substance containing methamphetamine within the Western District of Missouri and elsewhere and did so between during August 1, 2019, and March 26, 2021.

On March 25, 2021, **BAILEY** waived his *Miranda* rights and agreed to speak with investigators. **BAILEY** admitted to beginning a drug conspiracy with his supplier beginning around August 2019. Over the course of the conspiracy, **BAILEY** obtained seven speaker boxes from his supplier. Each speaker box contained roughly 15 kilograms of methamphetamine. Thus, **BAILEY** admits that the conspiracy accounted for 105 kilograms of methamphetamine (15 kilograms x 7). **BAILEY** would take the methamphetamine, distribute it, repay his supplier, and he and his co-conspirators would keep whatever profit remained. **BAILEY** paid his $10,000 per kilogram of methamphetamine, which equated to $150,000 for each of the seven speaker boxes with 15 kilograms.

**4. Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

**5.    Statutory Penalties.** The defendant understands that upon his plea of guilty to the lesser included offense of Count One of the Indictment charging him with a violation of 21 U.S.C.

4

§§ 841(a)(1) and (b)(1)(B), and 846, that is, conspiracy to distribute 50 grams or more of methamphetamine, the minimum penalty the Court may impose is not less than five (5) years imprisonment, the maximum penalty the Court may impose is not more than forty (40) years imprisonment, a $5,000,000.00 fine, and the Court shall impose not less than four (4) years of supervised release. The defendant further understands that this offense is a Class ~~B~~ felony. [STF ARD]

The defendant further understands that upon his plea of guilty to Count Six of the Indictment charging him with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), the minimum sentence the Court may impose is five (5) years imprisonment. The maximum penalty the Court may impose is not more than life imprisonment, a $250,000 fine, and five (5) years of supervised release. Any sentence of imprisonment on Count Five must run consecutive to any other sentence of imprisonment. The defendant further understands that this is a Class A felony.

Furthermore, each count listed above requires a $100 mandatory special assessment.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a.    in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission. While these Guidelines are advisory in nature, and the Court ordinarily would have the discretion to impose a sentence either less than or greater than the court-determined advisory Guidelines range, in this instance the parties agree, pursuant to Rule 11(c)(1)(C), that the Court must impose sentence as follows: the Court will impose a sentence of at least 13 years (156 months), but not more than 23 years (276 months). The Court will also impose a term of supervised release up to five years to follow imprisonment, and a $100 mandatory special assessment per count of conviction. If the Court accepts this plea agreement, it must inform the defendant that sentence will be imposed in accordance with this agreement of the parties. If the Court rejects this plea agreement, it must, on the record and in open court, inform the parties that the Court rejects the plea agreement, advise the defendant personally that because the Court is rejecting the plea agreement the Court is not required to impose sentence in accordance with the

5

agreement of the parties, give the defendant an opportunity to withdraw defendant's guilty plea, and further advise the defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the defendant than the plea agreement contemplated;

b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c. As to Count One, in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to four years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed. As to Count Six, in addition to a sentence of imprisonment, the Court must impose a term of supervised release of not more than five (5) years;

d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to five years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed five years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Guidelines range;

f. any sentence of imprisonment imposed will not allow for parole.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the crimes described above for which it has venue, and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Counts Four and Five of the Indictment at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against

6

the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against his if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against his following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against his following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

**8.** **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

   b. The parties agree that the applicable Guidelines section for Count One is contained in the Drug Quantity Table in U.S.S.G. § 2D1.1(c), and the parties agree that the applicable base offense level is not less than a base offense level 38;

   c. The parties agree the following enhancements apply:

       i. the four level Increase under § 3B1.1(a); and
       ii. the two level increase under § 2D1.1(b)(12);

   d. The parties agree the applicable Guidelines section for Count Six is U.S.S.G. § 2K2.4(b), which provides for a guideline range of 60 months consecutive;

   e. The defendant has admitted his guilt and clearly accepted responsibility for his actions and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of

8

guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

f. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

g. The defendant understands that the estimated Guideline calculations set forth in the subsections of this paragraph do not bind the Court or the United States Probation Office with respect to the Court's determination of the applicable advisory Guidelines;

h. The defendant and the United States confirm that the agreed sentence set forth in paragraph 6 above is both reasonable and authorized by law;

i. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed and waives any right to have those facts alleged in the Superseding Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

j. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11.** **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 13, and its

9

subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12.** **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13.** **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charge in the Information or Indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

**14.** **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

10

b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d. the right to confront and cross-examine the witnesses who testify against him;

e. the right to compel or subpoena witnesses to appear on his behalf; and

f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask his questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against his in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

### 15. Waiver of Appellate and Post-Conviction Rights.

a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and

11

may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

    a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Indictment which are to be dismissed and all other uncharged related criminal activity.

    b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

    c. The defendant willfully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

    d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

    e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

    f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to his to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

    g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The

12

Case 4:22-cr-00235-BP   Document 223   Filed 10/01/24   Page 12 of 15

defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17.** **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18.** **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19.** **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the

13

defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by his to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by his before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against his in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by his subsequent to this plea agreement.

**21.** **Defendant Will Surrender to Custody At The Plea.** The defendant understands that a crime to which defendant is pleading guilty, conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), is one of the offenses listed in 18 U.S.C. §§ 3142(f)(1)(A), (f)(1)(B), or (f)(1)(C). Accordingly, pursuant to 18 U.S.C. § 3143(a)(2), the Court must detain the defendant after defendant pleads guilty. The defendant agrees not to contest being detained immediately after the guilty plea, and to surrender to the custody of the U.S. Marshals at that time.

**22. No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written

14

supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that the constitutional implications inherent in plea agreements shall determine the interpretation and nature of its terms.

Teresa A. Moore
United States Attorney

Dated: 10/1/24

Sean T. Foley
Assistant United States Attorney
Violent Crime & Drug Trafficking Unit

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 10/1/2024

William Lee Bailey
Defendant

I am defendant William Lee Bailey's attorney. I have fully explained to him his rights with respect to the offenses charged in the Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, William Lee Bailey's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 10/1/2024

Arimeta Dupree
Attorney for Defendant William Lee Bailey

15